MEADE, Respondent, vs. DANE COUNTY, imp., Appellant.

*January 15—February 3, 1914.*

*Statutes: Construction: "Resolutions" of county board, etc.: Constitutional law: Direct legislation in counties and cities: Referendum review of acts of county board, etc.: Delegation of administrative, legislative, and judicial powers.*

1. The words "ordinance or resolution" in sub. 1, sec. 39*j*, Stats., which provides for a referendum review of acts of the county board of supervisors, cover all exercise of power by the county board which lawfully may be or is exercised in the form of a resolution.

2. Oral motions when adopted by the county board become resolutions or orders of that body, and are within said statute.

3. Emergency resolutions, among which are included those which make appropriations for maintaining the county government or any public institution, although they take effect at once, either in whole or in part according to circumstances, appear to be, equally with other resolutions of the supervisors, subject to the referendum review provided for in said act.

4. In the exercise of many administrative, local legislative, and *quasi*-judicial functions, the county board acts, by delegated authority, as an administrative unit of the state, by virtue of sec. 22, art. IV, Const.; and sec. 39*j*, Stats., is invalid because it attempts to delegate to the electors administrative powers which by said section of the constitution are required to be delegated, if at all, to the county board.

5. As to emergency resolutions, the effect of said sec. 39*j* is to confer upon the electors of the county the legislative power of repeal, and for that reason it is in violation of sec. 22, art. IV, Const., and void.

6. Said sec. 39*j* grants the power of annulling or repealing ordinances as well as resolutions, and this is a delegation of legislative power and forbidden by the constitution.

7. So far as said sec. 39*j* grants to the electors the power to review and reverse the otherwise final decisions of the county board acting in a *quasi*-judicial capacity, it is a delegation of judicial power, which is also forbidden by the constitution.

APPEAL from a judgment of the circuit court for Dane county: GEORGE GRIMM, Judge. *Reversed.*

The plaintiff, a resident and taxpayer of *Dane County*, brought this action in behalf of himself and all other tax-

payers of the county against said county and Robert W.
Davis, county treasurer thereof, William Pierstorff, the
chairman of the board of supervisors, and also against
William Dreger and his wife, from whom the county intends
to purchase land. January 30, 1913, the county board of
supervisors, then in regular session, approved the report of
a special committee of its members recommending the pur-
chase of a farm from the defendant Dreger adjoining the
county poor farm, for an addition thereunto. The record
of this proceeding was as follows: "The board then voted
on the purchase of the Dreger farm. Adopted. Ayes 38,
noes 4." On January 31, 1913, the board took action evi-
denced in the record of their proceedings as follows: "The
board then took up the resolution of Mr. Thinnes appropri-
ating money for the purchase of the Dreger farm. The
resolution was unanimously adopted on a call of the ayes
and noes as follows:" (Here follows the call vote.) The rec-
ord of the third proceeding is as follows: "Mr. Thinnes
moved that the chairman, clerk, and district attorney be
authorized to complete the purchase. Carried."

On February 18 and 19, 1913, three petitions, each con-
taining the signatures of electors of *Dane County* equal in
number to more than twenty per cent. of the votes cast for
governor in said county at the last preceding election, were
filed with the county clerk. One of the petitions referred
to the action of the county board mentioned authorizing the
purchase of said Dreger farm, one to the resolution of the
county board mentioned appropriating the sum of $24,200
for the purchase of said Dreger farm, and another to the ac-
tion of the county board mentioned authorizing the chair-
man of the board, the county clerk, and the district attorney
to complete the purchase of the farm. In the petitions each
of these acts of the county board was called a resolution, and
each petition prayed that the operation of each of the afore-
said resolutions be suspended pursuant to sec. 39*j*, Stats.

1911. On March 13, 1913, the county board met in special session and the clerk presented to the board the aforesaid' petitions, together with a certificate showing that the petitions had been properly signed by the requisite number of electors and duly verified, but the county board neither repealed the so-called resolutions referred to in said petitions nor provided for the submission of either of said resolutions to a vote of the people at any election as provided for in sec. 39j. The county board ignored the petitions, and the record of their proceedings at the said session of March 1st contains the following:

"The clerk read the following letter from William Dreger and Hannah Dreger, his wife:
"To Dane County; to Wm. H. Pierstorff, Chairman Dane County Board; to G. J. Fjelstad, County Clerk:
"In compliance with a certain land contract entered into February 4, 1913, between the undersigned and the county of Dane, by its proper officers, and by virtue of authority vested in said officers by the Dane county board, the undersigned hereby tender the said Dane County, duly and properly executed, deeds of the land described in said contract, vesting marketable title in Dane County, together with an abstract of said property complete to date of transfer, and demand in return therefor the sum of twenty-three thousand one hundred and twenty dollars in cash.
"WILLIAM DREGER.
"HANNAH DREGER.
"By Gilbert, Jackson & Ela, their Attorneys."

A county order for $1,000 had been theretofore issued to the Dregers in part payment and was paid, and a county order for the remainder of $23,120 was issued but its payment arrested by this suit.

The learned circuit judge held the proceedings for the purchase of this farm void and gave judgment restraining the defendants from completing the purchase of said farm or paying the remainder of the purchase price or any part thereof until such time as the resolutions providing for the

purchase of the farm, appropriating the money therefor, and authorizing the proper officers to make and complete the purchase should have been submitted to and approved by the electors of *Dane County* at a general or special election. It was further decreed that the county of *Dane* recover from the defendant William Dreger the said sum of $1,000 paid and that the plaintiff recover costs. The county appeals from the judgment.

Sec. 39*j*, Stats., reads as follows:

"1. No ordinance passed by the council of any city, except of such cities as are organized under sections 925*m*—301 to 925*m*—317, inclusive, of the statutes, and no ordinance or resolution of any county board shall go into effect within twenty days from the time of its passage, but emergency ordinances and resolutions may be made to take effect at a time prescribed in such ordinance or resolution.

"2. An emergency ordinance or resolution shall be any ordinance or resolution, declared by a two-thirds vote of the members elected to the city council or county board, to be necessary for any immediate purpose, or any ordinance or resolution making any appropriation for maintaining the city or county government or maintaining or aiding any public institution. The part of such appropriation, not exceeding the next previous annual appropriation for the same purpose, shall take effect and be available at the time fixed by law. The increase in any such appropriation shall only take effect as in the case of other ordinances or resolutions, and such increase or any part thereof specified in the petition may be referred to a vote of the people upon petition.

"3. If within twenty days after the passage and publication of any ordinance or resolution, a petition, signed by qualified electors of the city or county equal in number to at least twenty per cent. of all the votes cast for governor in such city or county at the last preceding regular election, shall be filed with the city or county clerk and certified by him to the city council or county board, praying that the operation of such ordinance or resolution be suspended, the operation of such ordinance or resolution, unless the same shall be an emergency ordinance or resolution, shall be sus-

pended. At its next regular meeting, or at a special meeting prior to the time of its regular meeting, the city council or county board shall consider such ordinance or resolution, and either repeal it or submit it to the electors of the city or county at the next regular election or at a special election to be called for that purpose, if no such general or special election shall be held within ninety days. If any such ordinance or resolution shall be approved by a majority of the electors voting thereon, it shall take effect and be in force from and after twenty days from the date of the election.

"4. An emergency ordinance or resolution shall remain in force notwithstanding any petition filed upon it, but such ordinance or resolution shall stand repealed from and after twenty days after being rejected by a majority of the qualified electors voting thereon.

"5. Nothing contained in this section shall apply to any city ordinance which grants a franchise for a public utility, or authorizes the issue of municipal bonds."

*Robert N. Nelson,* attorney, and *Sam T. Swansen,* of counsel, for the appellant, contended, *inter alia,* that sec. 39*j,* Stats., applies only to such acts as were required to be done by ordinance or by resolution partaking of the same nature, and does not embrace motions such as were here in question. Beach, Pub. Corp. § 484; 1 Dillon, Mun. Corp. (5th ed.) § 307; *Altamont v. B. & O. S. W. R. Co.* 184 Ill. 47, 56 N. E. 340; *Fuller v. Scranton,* 1 Pa. Co. Ct. Rep. 405, 407; 6 Words & Phrases, 5026; 7 id. 6173; *Campbell v. Cincinnati,* 49 Ohio St. 463, 31 N. E. 606. The statute is unreasonable, inconsistent, and uncertain, and hence void. *State v. Wentler,* 76 Wis. 89, 44 N. W. 841, 45 N. W. 816; *Wentworth v. Racine Co.* 99 Wis. 26, 74 N. W. 551. It is unconstitutional as a delegation of legislative power to the electors. *In re North Milwaukee,* 93 Wis. 616, 67 N. W. 1033; *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738; *Slinger v. Henneman,* 38 Wis. 504; *Parks v. Wyandotte Co.* 61 Fed. 436; Cooley, Const. Lim. (7th ed.) 137, 248.

For the respondent there was a brief by *Welton & Marks,* and oral argument by *C. R. Welton* and *C. E. Marks.* As to the meaning of the words "ordinance" and "resolution," they cited 2 Dillon, Mun. Corp. (5th ed.) § 571; *Altamont v. B. & O. S. W. R. Co.* 184 Ill. 47, 56 N. E. 340; *McDowell v. People,* 204 Ill. 499, 68 N. E. 379, 381; *Paxton v. Bogardus,* 201 Ill. 628, 66 N. E. 853; *Cape Girardeau v. Fougeu,* 30 Mo. App. 551, 556; *Tracey v. People,* 6 Colo. 151, 153; *Fuller v. Scranton,* 2 Sad. (Pa.) 61, 4 Atl. 467, 469.

TIMLIN, J. By sub. 1 of sec. 39$j$, Stats., no ordinance passed by the council of any city except such cities as are organized under secs. 925$m$—301 to 925$m$—317, inclusive, of the statutes, and no ordinance or resolution of any county board, shall go into effect within twenty days from the time of its passage. This would seem to apply only to ordinances of a city council and ordinances or resolutions of a county board were it not for sub. 3, which in apparent forgetfulness of sub. 1, which provides no stay of twenty days for resolutions of a city council, permits, nevertheless, a petition by qualified electors of the city praying that the operation of such resolutions be suspended, and provides for their suspension. Cities referred to in secs. 925$m$—301 to 925$m$—317 are those organized under the so-called commission form of government. Upon petition of a stated number of qualified electors filed with the city or county clerk, as the case may be, the city council or county board must at its next meeting either repeal the ordinance or resolution or submit it to the electors at the next regular election, or at a special election to be called for that purpose if there is no general election or no special election for other purposes to be held within ninety days. If the ordinance or resolution shall be approved by a majority of the electors voting thereon it shall take effect and be in force after twenty days from the date

of the election. If it be not so approved *it shall stand repealed from and after twenty days next following the election.* The contention of counsel for respondent is that this applies to all ordinances and all resolutions of any kind and upon any subject except those granting a franchise for a public utility or authorizing the issue of municipal bonds. The contention is that the statute applies to resolutions of condolence or of thanks, resolutions of adjournment, for the purchase of lead pencils, stamps, or stationery, for the repair of roads, for the relief of the poor, for the sale of tax certificates, for the settlement of a cause of action, the repair of county buildings or their insurance, the apportionment and levy of taxes or the manner and form of keeping the public records, the encouragement of agricultural fairs or the purchase of land, the making of the lists of jurors or the borrowing of money, the diet of the inmates of the jail or the publication of the proceedings of the county board, the fees of officers and magistrates in vagrancy prosecutions had before them, the vacation and change of the boundaries of towns, the laying out and discontinuing of roads, the allowance of bounties for the destruction of wild animals, the change of the name of any town or village or person, the vacation of any city, town, or village plat, the granting of charters to build and maintain toll and free bridges, the incorporation of literary, benevolent, charitable, and scientific institutions, the granting of charters and conferring of corporate powers upon turnpike companies, the establishment of dock or wharf lines upon navigable waters, the erection of monuments to the memory of distinguished citizens of the county, the procuring of transcripts or abstracts of the records of other counties affecting the title of real estate, the making of leases, contracts, or other conveyances in relation to lands acquired for public purposes, and the many other matters of a temporary or administrative nature which

might be acted upon by a county board of supervisors or by the common council of a city.  Ch. 36, Stats.

In the case of a large city where the common council meets fortnightly, after the lapse of the first ninety days it would be in the power of twenty per centum of the electors to enjoy an election in each alternate week in review of the resolutions of the city council, and another series of county elections sandwiched in between these numerous city elections to review the resolutions of the county board of supervisors adopted at one of its numerous meetings.  Taken literally the statute reads that way.  To those who enjoy elections it gives promise of almost unlimited hilarity; to those who pay the bills almost unlimited expense.  But it is contended that the good sense of the people would be a sufficient safeguard against such a superabundance of elections.  This is in effect an argument that the good sense of the people at election is superior to the good sense of the statute as well as to the good sense of the city council or county board.  If the statute authorizes such a condition of affairs its validity cannot be tested by any such consideration as this.  An invalid statute is not rendered valid merely because those whom it attempts to authorize will probably have too much good sense to avail themselves of such authority.  The plaintiff is here endeavoring to assert rights under this statute.

It is noticeable in scanning this statute that all ordinances and resolutions, whether of the class called "emergency ordinances and resolutions" or not, are subject to this referendum review, the only difference being that an emergency ordinance or resolution goes into effect immediately, while all others do not go into effect until twenty days from the time of their passage, and perhaps not then if the petition for an election is filed.  But there is a referendum review in either case.  An emergency ordinance or resolution is described as one declared by a two-thirds vote of the mem-

bers elected to the city council or county board to be neces-
sary for some immediate purpose, or else an ordinance or
resolution *making an appropriation for maintaining the city
or county government or maintaining any public institution.*
In ordinances or resolutions of this description the part of
such appropriation not exceeding the next previous annual
appropriation for the same purpose shall take effect and be
available at the time fixed by law, apparently discriminat-
ing between the time fixed by law and the time fixed by this
statute.    The increase in any such appropriation, however,
shall only take effect as in the case of other ordinances or
resolutions, and such increase or any part thereof specified
in the petition may be referred to a vote of the people upon
petition.    This last would seem to indicate that only such
increase or only such part thereof as was specified in the pe-
tition might be referred to a vote of the people.    But sub. 3
includes all ordinances or resolutions, and sub. 4 provides
that "an emergency ordinance or resolution shall remain in
force notwithstanding any petition filed upon it, but such
ordinance or resolution shall stand repealed from and after
twenty days after being rejected by a majority of the quali-
fied electors voting thereon."    This last is general and ap-
parently applies to all emergency ordinances; therefore in-
cludes ordinances making appropriations for maintaining
the city or county government or maintaining or aiding any
public institution as defined in sub. 2.

With a view to upholding this statute we have diligently
scanned it for some limitation upon this general right of
appeal from the laws or resolutions of the city council or
county board to the city or county electors.    But having due
regard to the language employed and the nature of the sub-
ject legislated upon, we find none, and, as heretofore stated,
counsel for respondent will admit of none.    We cannot limit
it to those doings of the board which are required by law to
be published, because that requirement covers all the pro-

ceedings.   Appellant's counsel argue that this referendum
review must be limited to such exercise of power by the
county board or city council as other statutes require to be
exercised by ordinance or resolution.    Hence, there being no
such requirement concerning the proceedings in question,
there was no right of referendum review under sec. 39$j$.
Of the statutes, sec. 653 provides that the county board may
by ordinance or resolution direct the clerk to sell and convey
certain real estate; sec. 658 negatively that bonds shall not
be issued except in pursuance of a resolution or ordinance;
sec. 668 that the board may by resolution authorize the
chairman to appoint committees; sec. 670 that all powers
thereby conferred shall be carried into effect by ordinance;
sec. 671$m$ speaks of ordinances or resolutions for the di-
vision, etc., of towns; sec. 694 authorizes the county board
to change by resolution the manner of compensating the
sheriff; sec. 697$v$ extending the duties of certain trustees by
resolution; sec. 697—1 provides for acquiring land upon
which to maintain a house of correction and providing by
resolution for such acquisition; sec. 697—32 *et seq.* for ex-
pressing by resolution an opinion that it is for the best inter-
ests of the county and the inhabitants thereof that a viaduct or
bridge be erected, etc.; sec. 697—40 that the board may by
resolution direct the chairman to sign and the clerk to coun-
tersign bonds; sec. 1519 that the county board may by reso-
lution abolish the distinction between county poor and town
poor, etc.    At the same time secs. 654, 656, 669, 682, 690,
693, 694, 697$a$, 697$o$, 697—5, 697—11, 697—15, 697—18,
697—22, 697—23, and other sections, authorize the board,
without mentioning the manner of exercise, to "fix and
designate," to "appoint," to "order," to "direct," to "pre-
scribe," to "perform," to "grant," to "make," to "establish,"
etc.    These different modes of expressing the authority con-
ferred upon the board by the legislature seem to be entirely
haphazard and cannot be classified either with reference to

the object to be acted upon or with reference to the nature of the power exercised. The statutory requirement or permission that the act be by ordinance or resolution has no apparent relation to the desirability of or to the right of a referendum review. Besides, it was held ' in *Green Bay v. Brauns,* 50 Wis. 204, 6 N. W. 503, that when an oral motion is adopted by the common council it becomes a resolution or order of that body. See, also, *El Paso G., E. L. & P. Co. v. El Paso,* 22 Tex. Civ. App. 309, 54 S. W. 798; *Pierson v. Dover,* 61 N. J. Law, 404, 39 Atl. 675.

While there are in some instances and for some purposes fundamental distinctions between an ordinance and a resolution, there is no such broad distinction between a resolution and other acts of an administrative or *quasi*-legislative board. Almost any one of these acts not required to be by, ordinance may be in the form of a resolution. *Alma v. Guaranty Sav. Bank,* 60 Fed. 203, 8 C. C. A. 564.

We are led to the conclusion that the words "ordinance or resolution" cover all exercise of power by the county board which either may lawfully be or is exercised in the form of a resolution, and hence that the acts in question are within sec. 39*j*. The county board for many purposes and in the exercise of many administrative, local legislative, and *quasi*-judicial functions represents the county as a local government and also as an administrative unit of the state. Instead of conferring authority upon an officer as is done under other systems, the state avails itself of its local subdivisions and the officers thereof to administer locally laws of general character in the administration of which all the people of the state are interested, such as the maintenance of high-ways, public charities, support of the poor, schools, and police regulations generally. In the exercise of such power the county acts by delegated authority, and the state constitution (sec. 22, art. IV) expressly authorizes the legislature to confer upon the boards of supervisors of the several

counties "such powers of a local, legislative and administrative character."

The question arises whether the legislature could make such powers of the county board so conferred, which affect the whole people of the state and the state itself in its sovereign capacity and which the county through its board of supervisors exercises as an administrative unit or officer of the state, take effect upon the contingency that only the voters of a single county approve it at an election? Again, the county board may allow or disallow the claim of any person against a county. Secs. 676 to 682. Suppose it allows the claim. No appeal to the courts is authorized in such case. May the matter then go by referendum to the electors to disallow it? In many other cases the county board is authorized to act in a *quasi*-judicial capacity upon rights of action. Is it due process of law to permit the electors to determine such matters? These questions have not been argued and we express no opinion upon them. It is clear, however, that the action or resolution of the county board in question is, within the terms of sec. 39*j,* an emergency order or resolution, because it makes an appropriation for or is in aid of a public institution, and that by sub. 4 the action of the county board is not merely to go into effect upon the contingency that a majority of the electors declare it, but, on the contrary, takes effect from the time of its passage and is repealed by the action of the electors in case the majority so decide. We think there is no doubt that this is the clear meaning of the law. This is not making the decision of the board go into effect only upon condition. It is delegating to the electors the legislative power of repeal. Moreover, it is vesting in the electors of the county the powers which the constitution says may be vested in the county board. The constitution provides for and authorizes a delegation of such powers to a specified body. *Expressio unius est exclusio 'alterius.* In that sec. 39*j* conflicts with the constitution.

*Ex parte Vallandigham,* 1 Wall. 243, 252; *State ex rel. Crawford v. Hastings,* 10 Wis. 525, 531.

In at least these respects, therefore, this statute conflicts with the constitution: (1) because it violates sec. 22 of art. IV in attempting to delegate to the electors powers which that section, interpreted by the regular rules of interpretation applied in the *Vallandigham Case* and in the *Hastings Case, supra,* requires to be otherwise delegated; (2) because as regards emergency resolutions there defined, which includes the resolutions in question here, the statute is an attempted delegation of the legislative power of repeal. In this latter respect the case is unlike *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 125 N. W. 961, and cases there cited, where the legislation was to go into effect upon the occurrence of a designated event such as the result of an election. (3) Sec. 39*j* grants to the electors of the county the power to repeal and annul ordinances as well as resolutions. The grant is inseparable. As to all ordinances, and as to those resolutions which are in effect ordinances, declared by said section to be in force and effect until repealed by the electors, this is a delegation of legislative power and forbidden by constitutional law. As to some other resolutions it is a delegation of judicial power and likewise forbidden. The power to review and reverse the otherwise final decisions of an administrative officer or department or of a *quasi*-judicial tribunal is judicial power expressly conferred elsewhere (sec. 8, art. VII, Const.). Therefore it cannot be conferred upon the electors under the rule hereinbefore referred to. *State ex rel. Crawford v. Hastings,* 10 Wis. 525, 531; *State ex rel. New Richmond v. Davidson,* 114 Wis. 563, 578 (88 N. W. 596, 90 N. W. 1067), and cases cited. See, also, pp. 580, 581.

Hundreds of illustrative instances going back to the earliest·times showing the exercise of such power by the judicial department might be cited. Even the judicial power in this

direction is limited. As to all other resolutions of the county board this is a delegation of administrative power, and this class of powers the constitution, sec. 22, art. IV, permits to be delegated only to the county board. Besides the indications of intention in this respect appearing upon the face of the constitution by ordinary and fair interpretation there are fundamental reasons. The action of the board of supervisors might in a proper case be coerced by *mandamus*. The electors could not be compelled to vote aye or nay. The state would in the latter case then surrender to the voters in one county its right and duty to administer the laws in the instances mentioned in which the whole people of the state are interested. The voters might refuse to provide prisons or workhouses, hospitals, highways or schools or courthouses, support of the poor, or police protection, and the state would be powerless if this statute were valid. The statute in question seems to have been framed in entire unconsciousness of fundamental principles, and we have no reasonable doubt of its invalidity. No other questions need be considered.

*By the Court.*—Judgment reversed, and the cause remanded with directions to dismiss the complaint.

BARNES, J., dissents.